*115
 
 O’NIELL, C. X
 

 (dissenting). My reason for declining to subscribe to the majority opinion or the decree in this case is that the sale of the property, a la folie enchére, was made after only ten days’ instead of thirty days’ publication of the notice of sale. It is true that on the former appeal in this case a majority of the members of the court construed the translation of the French text of article 2589 of the Civil Code of 1825 — which was copied as article 2611 in the Revision of 1870 — as meaning that a sale a la folie enchére, of real estate as well as of chattels, should be preceded by only ten days’ and not thirty days’ publication of the notice of sale. Stockelback v. Bradley, 159 La. 336, 105 So. 363. Ordinarily, I would say that, however wrong that translation of the article of the Code may be, it is the law of this case. But the error appears to me so plain and certain that I am very hopeful that it will be corrected eventually by the overruling of this decision; and I am in favor of correcting it now, while wé have yet an opportunity to correct it, in the case in which the error is made. It is not at all unlikely that the reason why the property was sold for so much less at the second auction sale than at the first is that there was not a sufficient publication of the notice of the second sale. The defendant’s plea, therefore, is not at all technical, but goes to the merits of the case.
 

 Article 2611 of the Code (which was article 2589 of the Code of 1825), on which this suit is founded, declares that, in all cases of sales by auction, whether of movables or immovables, if the person to whom the adjudication is made does not pay the price within the time required by the two preceding articles, 2609 and 2610, which means within twenty-four hours, the seller may, at the end of ten days, and after the usual publications, reoffer the property at public auction, and, if it is then sold at a price less than that which the adjudicatee at the first offering bid for it, he shall be liable to the seller for the deficiency and the expense of the second sale. The exact translation of the French text is “the seller may, at the end of ten days, and after the usual publications, reoffer at public sale,” viz. “le vendeur peut, au bout de dix jours, et aprés les publications d’usage, remettre en vente publique,” etc. After the usual publication — aprés les publications d’usage — means, of course, after 30 days’ publication if the property be immovable, or after 10 days’ publication if it be movable property. The publication, according to the plain language of the article of the Code, cannot be made until “at the end of ten days” — au bout de dix jours. Nothing could be plainer than to say “the seller may at the end of ten days, and after the usual publication, reoffer at public sale,” which is the only correct translation, and is the precise translation, of “le vendeur peut au bout de dix jours, et aprés les publications d’usage, remettre en .vente publique.” The translators of the Code translated that language— without intending to alter its meaning — thus: “The seller at the end of ten days, and after the customary notices, may again expose to public sale” etc. The words “the customary notices,” therefore, are the translation of les publications d’usage, which means 30 days’ publication for immovable and 10 days’ for movable property.
 

 In the opinion heretofore rendered, on the exception of no right of action, it was said that this court had held, in Stewart v. Paulding, 7 La. 506, and" in Duncan v. Armant, 3 La. Ann. 84, that the language “at the end of ten days, and after the customary notices,” or “at the end of ten days,’ and after the usual publications” — les publications d’usage —meant “after ten days’ publication,” for a sale either of movable or of immovable property. I pointed out in my dissenting opinion
 
 *117
 
 that neither of those decisions was authority for the proposition. The reporter simply made an error in stating in the syllabus, in Stewart v. Paulding, that the decision was authority for that unreasonable translation of the language of the Code. There was no such question at issue in the case. It does not appear in the statement of the case, or in the opinion, that the notice of sale was published less than 30 days, or that any such defense was made, if it was true. In Duncan v. Armant, the sale a la folie enchere was preceded by 32 days’ publication of the notice of sale. It is so stated in the opinion in the case. There was no complaint about that. The • complaint — and the only complaint— was that the publications of the notice of sale were commenced
 
 after
 
 the expiration of ten days from the first auction. It was contended, absurdly, that the publications of notice of the second sale should have commenced
 
 within
 
 ten days after the first auction. Mr. Justice Rost missed the point, and went on to say — by way of obiter dictum— that 10 days’ publication, instead of the 32 days’ in which the notice was published, would have been sufficient. That declaration was not at all pertinent to the question before the court, and cannot be regarded as a decision by the court, contradicting the plain language of the Code.
 

 In Gallier v. Garcia, 2 Rob. 325, the court gave its interpretation of article 2611 (then 2589) of the Civil Code, thus:
 

 “When we turn to article 2589 [now 2611] of the Code, and observe the formalities required for selling property at the risk of the first bidder, we find them altogether different from the directions given to the sheriff by article 689 of the Code of Practice. Under the former article, if the price bid be not paid, no
 
 steps can be taken, until after the expiration of ten days, to have a second sale, and then the customary advertisements must be published.”
 
 (The italics are mine.)
 

 In a much later case (Weil v. Schwartz, 49 La. Ann. 585, 21 So. 860), the court quoted approvingly from Gallier v. Garcia, as follows:
 

 “After a most deliberate examination of the question, we are of opinion that the doctrine a la folie ench&re is not applicable to those sales made by a sheriff under writs issuing on final judgments. Article 2595 of the Code declares that judicial sales are subject to the same rules as other public sales in all such things as are not contrary to the formalities expressly prescribed for such sales and with the modifications made thereafter. When we turn to article 2589 [now 2611] of the Code and observe the formalities required for selling property at the risk of the first bidder, we find them altogether different from the directions given to the sheriff by article 689 of the Code of Practice.
 
 XJnder the former article, if the price be not paid, no steps can be taken, until after the expiration of ten days, to have a second sale, and then the customary ’advertisements must be published.
 
 But under the latter no such * * * formalities are necessary,” etc. (The italics are mine.)
 

 And in Weil v. Schwartz the court added:
 

 “The jurisprudence is principally grounded upon the difference between the provisions of Rev. Civ. Code, art. 2611, which treats of ‘all cases of sale by auction,’ and that of Code Prac. art. 689, which treats of sheriff's sales,
 
 exclusively
 
 — the
 
 latter contemplating no delay whatever in making the second advertisement, while the former provides that the seller may proceed at the end of the ten days to expose the thing first adjudicated for a second sale.”
 

 There is no justification or warrant whatever for confusing the ten days of grace— which are to precede the u'sual publications —with the period in which these usual publications are to be made.
 

 Aside from the simple and unambiguous language of article 2611 of the Civil Code, especially when read in the light of the French text which it is a translation of, we know that the lawmaker did not intend that an auction sale of real estate should be preceded by only ten instead of thirty days’ publication of the notice of sale. The usual publications — les publications d’usage — are for thirty days, for a public sale of real es
 
 *119
 
 tate. In fact that Is the invariable custom and rule. There is no deviation from it elsewhere in the law of Louisiana. And there is less reason for dispensing with
 
 the usual publications
 
 for sales a la folie enchSre than there would be for dispensing with
 
 the usual publications
 
 for the first offering of the property for sale. After notice has been published for thirty days, informing the public and particularly those who may be especially interested that a certain piece of- property will be sold at public auction on a specified day, no one is apt to expect the same property to be offered for sale at public auction again at the end of ten days.
 

 The reasons why the law allows ten days of grace, before the usual publications can begin, for a sale a la folie enchSre, is that it is a harsh proceeding, and is not the only remedy given the seller, when the last and highest bidder at an auction sale fails to pay the amount of his bid. The seller may, after twenty-four hours, according to articles 2609 and 2610, sue the last and highest bidder for specific performance, or for damages. And it was so said in Lalaurie v. Cahallen, 2 La. 401, viz:
 

 “When the last bidder does not comply with the terms of sale, the law authorizes the property to be put up again for sale; but it does not make it the duty of the vendor to do so, and leaves him at liberty to pursue all other legai remedies.”
 

 The ruling heretofore made in this case was on an exception of no right of'action. Inasmuch as such a plea could be filed as effectively now, or at any stage of the proceedings, as in limine litis, the court’s former rulings on the plea should not prevent our observing and ruling now that, with all of the evidence before the court, the plaintiff has no right to claim the penalty prescribed by article 2611 of the Civil Code; for it is proven — and is not disputed — that the sale a la folie enchSre was not preceded by “the usual publications,” required by the Code.